Jorge **VALDES ALVAREZ**

v.

**UNITED STATES of America.**

**Civ. No. 869–67.**

United States District Court
D. Puerto Rico.

Oct. 2, 1968.

Jose Trias Monje, San Juan, P. R., for petitioner.

Blas C. Herrero, Asst. U. S. Atty., San Juan, P. R., for defendant.

## ORDER

FERNANDEZ–BADILLO, District Judge.

This case arises as a result of a motion to vacate Judgment under Title 28, Unit-ed States Code, Section 2255, filed on December 28, 1967 by the petitioner, *pro se.* In that motion the petitioner alleges, among other things, that his sentence is invalid due to the fact that he did not have "due legal assistance during trial." Mr. José Trías Monje was appointed by this Court after the petitioner filed an affidavit alleging he was without funds to press his suit or to retain an attorney.

Petitioner's court-appointed counsel moved to amend the motion to vacate judgment in order to allege additional grounds. The additional grounds alleged are the following: (1) the sentence was imposed in violation of the laws of the United States in that the report of the presentence investigation upon which the sentence was predicated was inadequate; and (2) the sentencing of the defendant on the basis of incomplete information amounted to a denial of due process of law.

On February 2, 1968 this Court heard oral argument from petitioner's attorney and from the United States Attorney. Additionally, petitioner's attorney filed a written memorandum in support of the motion to vacate.

After carefully considering the facts and law applicable to this case, it is concluded that the motion to vacate judgment ought to be and the same is hereby denied.

Before considering each of the arguments advanced by the petitioner, a cursory review of the facts of this case is appropriate.

The petitioner was indicted by a grand jury on September 29, 1965. The indictment, consisting of 8 counts, charged various violations of the United States Narcotics Laws. It was shortly before the petitioner's indictment that the attorney that represented the petitioner continuously thereafter made his first appearance on his behalf. This was by motion for reduction of bond on September 23, 1965. This same attorney, an attorney retained by and therefore presumably

wholly acceptable and enjoying the complete confidence of the petitioner, appeared on the following occasions on behalf of his client:

September 23, 1965—Motion for Reduction of Bond

November 12, 1965—Motion for Reduction of Bond

December 2, 1965—Motion for Reduction of Bond

February 17, 1966—Motion for Continuance of Trial

February 24, 1966—Motion for Continuance of Trial

February 25, 1966—Motion for Continuance of Trial

June 5, 1967 —Change of Plea to Plea of Guilty

July 21, 1967 —Sentence.

This Court has meticulously reviewed the transcript of the proceedings that occurred at the time of the change of plea to guilty. This Court was very much impressed by the searching and incisive questions propounded by the Honorable Robert Van Pelt to determine the voluntariness of petitioner's plea of guilty on all 8 counts. Judge Van Pelt went so far as to insure that the petitioner was questioned as to each count and as to each of the materials facts alleged therein.

The sentence was imposed on July 21, 1967 by the Honorable Elmo B. Hunter who stated on that occasion:

"Judge Van Pelt took the plea of guilty in this case. There is in the official file a transcript of the entire proceeding involving the taking of the plea before Judge Van Pelt on June 5, 1967. I have reviewed that transcript. It shows that the defendant with full knowledge and understanding of the charges against him and entirely voluntarily entered his plea of guilty to counts 1, 2, 3, 4, 5, 6, 7 and 8. Judge Van Pelt very carefully ascertained that there was a factual basis for each of these pleas and that they were voluntarily and knowledgeably made before he accepted them. He ordered a presentence investigation report. I now have that report before me. I have read that report and now make it available in its entirety to this defendant and to his counsel." United States v. Jorge Valdés Alvarez, Cr. 80–65, Sentencing, Transcript of Record, pg. 3.

The presentence report was then given to petitioner's counsel before sentencing. U. S. v. Jorge Valdés Alvarez, Id. at pg. 6.

After calling certain unfavorable aspects of defendant's record to his attention and after giving the presentence report to petitioner's counsel the following dialogue occurred:

"THE COURT: Have you examined it sufficiently?

MR. RAMOS: Yes, *I am well familiar with it.*

THE COURT: Now gentlemen, this is, as I said, your opportunity to advise *the court if there is any reason why* sentence should not now be passed, or *to make any statement or showing that you care to make in mitigation of punishment, in connection with this sentencing, or in connection with this case.* And I now call on defendant's counsel." (Emphasis added) Id. at pgs. 6–7.

Thereafter petitioner's counsel spoke up (Id. at pgs. 7–8) as did the Assistant United States Attorney who charged the petitioner with being a large narcotics trafficker and "a hardened member of the criminal underground in Puerto Rico." Id. at pg. 11. Thereafter the petitioner's

counsel again spoke up on behalf of his client. Id. at pgs. 11–12.

Before imposing sentence the following colloquy took place:

"THE COURT: I wish to ask the defendant if he is satisfied with his counsel and satisfied that his counsel has given him the best representation and advice, which he is capable?

THE DEFENDANT: Yes, Sir.

THE COURT: Have you had all of the time that you wish to consult with your counsel concerning the sentencing?

THE DEFENDANT: Yes. I have had enough time; even though I have been in prison." Id. at pgs. 12–13.

In view of the foregoing, the allegation now made at this stage of the proceedings to the effect that the petitioner lacked adequate representation of counsel or that the Court lacked sufficient information upon which to sentence, appears frivolous and is, in fact, without merit.

The language of the First Circuit Court of Appeals is pertinent here:

"In this Court the defendant engages in the much too popular pastime of scrutinizing the transcript and alleging possible errors that had not been noted before. * * * We would add that the presentation of routine, previously unobjected to matters, often not error at all, * * * unduly burdens the Court and serves only to cast unmerited reflection upon trial counsel, who normally is in a better position to appraise the propriety and materiality of the conduct subsequently criticized, and presumably purposely did not object." Dichner v. United States, 348 F.2d 167, 168 (1st Cir. 1965).

Let us proceed to analyze in further detail each of the allegations presented by the petitioner.

### Lack of Adequate Representation of Counsel

The naked allegation now made by the petitioner that he lacked adequate representation of counsel flies squarely in the face of his own previous statements to this Court.

The picture that the record reveals is totally different. It cannot be overlooked that, in all of the pretrial proceeding and even before an indictment was returned, petitioner was represented by counsel of his choice. His counsel was not at that time court appointed. Nor can it be forgotten that for almost two years prior to sentencing his counsel was to all intents and purposes satisfactory to him. Even at sentencing and upon precise questioning by the Court, the petitioner manifested that he was satisfied with the legal representation he had retained and with the legal representation he received.

It is over five months after sentencing that, for the first time, a complaint is heard of inadequate representation of counsel. True, the sentence that the defendant received was severe. Nevertheless, it is within the bounds of discretion allowed by the law and not, in this Court's opinion, excessive when one views the past criminal history of the defendant which was amply called to the attention of petitioner and to his counsel's attention at the time of sentencing by the sentencing judge and upon which ample argument was heard.

The petitioner may have been surprised at an unexpected, severe sentence. This is not now the time, however, for petitioner to cast aspersions on his retained counsel in an effort to slide out from under the effects of what this Court is convinced and two other judges (the judge accepting the plea and the sentencing judge) believed to be an entirely voluntary plea of guilty.

### Lack of Adequate Information in the Presentence Report

This Court is of the opinion that the remedy here invoked (a collateral attack to vacate sentence under 28 U.S.C. § 2255) is improper. In Feeney v. United States, 392 F.2d 541 (1st Cir. 1968) decided April 18, 1968, the petitioner there alleged that the district court erred in not vacating a sentence because at the time of sentencing the petitioner, appar-

ently, was not advised of his right to make a statement on his own behalf. The words of the First Circuit Court of Appeals in that decision this Court finds not only applicable and persuasive in view of the facts of this case, but also binding within this district. The court said:

"A § 2255 proceeding is a collateral remedy available to a petitioner only when some fundamental right is denied and *not as a routine review at the behest of a defendant who is dissatisfied with his sentence.* Dirring v. United States, 370 F.2d 862 (1st Cir. 1967). It is established that failure on the part of the trial court to follow the formal requirements of Rule 32(a) is not of itself an error that can be raised by collateral attack. Machibroda v. United States, 368 U.S. 487, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962); Hill v. United States, 368 U.S. 424, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962)." (Emphasis added).

■■ The petitioner alleges that the presentence report was not comprehensive enough. Although this is not an argument susceptible of being pressed in a collateral attack according to the decision in Feeney v. United States, supra, this Court looked into the presentence report and disagrees with the petitioner.

The presentence report submitted in this case complies adequately with the requirements of Rule 32(c) of the Federal Rules of Criminal Procedure.

Rule 32(c) (2) reads:

"(2) *Report.* The report of the presentence investigation shall contain any prior criminal record of the defendant and *such* information about his characteristics, his financial condition and the circumstances affecting his behavior *as may be helpful* in imposing sentence or in granting probation, or in the correctional treatment of the defendant, and *such other information as may be required by the Court.*" (Emphasis added)

Complying with the disposition of Rule 32(c) (2), the report of the presentence investigation contains a conscientious presentation of a wealth of information about the defendant to be sentenced, presenting in a clear, concise manner the pertinent information of defendant's present delinquent situation, his past criminal record, his community reputation, and his personal version of the offense. It, then, follows the special sketch or outline officially designed by the Administrative Office of the United States Courts for such reports that is as follows:

Family history
Parents
Siblings

Marital history
Wife
Children

Home and Neighborhood
Education
Religion
Interests and Activities
Health
Employment
Military Service
Financial Situation
Evaluative Summary

That the report was considered by the Court adequate and of essential value for the sentencing of this defendant can be seen by the systematic, repeated citing from it which Judge Hunter did during the sentencing proceedings.

The Court was satisfied with the contents of the report as is evidenced by the fact that no additional information, verifications, specialized examinations, nor clarifications were requested by the Court nor from the petitioner or his counsel.

What and when is a presentence report complete or exhaustive is a relative judgment. And who, if not the judge himself, is the one who decides how little or how much information he needs to impose a sentence within limits fixed by the statute. This can go, all the way from nothing at all such as when the Court sentences without a presentence report, to instances in which the Court fixes no time

limit and demands total investigation. But many times there are unavoidable and categorical restrictions. Any presentence report on any alien, as is the petitioner in this case, who is a Cuban exile, has to be necessarily limited. He arrived as an exile to the United States in January 1963, committed the offense on February 1965 and was investigated by the Probation Officer in June 1967. In other words, only 4½ years of Valdés' life was materially accessible and subject to possible verification by the Probation Officer, while 17½ years of his life were spent in Cuba, a country which is simply inaccessible. Necessarily in such a case it is the petitioner himself who must be relied upon. The sketchiness mentioned by the Court and so much emphasized by the petitioner is a reflection of this unavoidable situation.

The defendant and his retained counsel, read the report which was made available prior to the imposition of sentence. They stated that they were "familiar" and satisfied with the contents of the report. Even when the unfavorable parts were read by the Court to them and they were expressly advised to make alterations or corrections, they offered no basic alteration, amendment, clarification nor correction and no request was made for further expansion of the report.

Finally, and what cannot be overlooked, is that the petitioner has wholly failed to substantiate his request for relief under the extraordinary remedy sought. He has failed to prove that any additional information is available or even exists that would materially affect the sentence.

There is only the petitioner's naked allegation that "The main failure in this case lies precisely in the almost total lack of information before the Court on the mental health of the defendant, his characteristics and the circumstances affecting his behavior." Yet neither petitioner nor his counsel have furnished this Court with any evidence that would indicate a mental imbalance either before, during or after his plea of guilty or to the present time.

What perhaps offends the sensibilities of petitioner's counsel in his client's past behavior is his criminal and antisocial activity. It is clear to this Court that this petitioner, since being exiled from Cuba approximately five years ago, has led a corrupt, immoral and criminal life selling narcotics for the sheer profit of it and to nourish the antisocial life he led. This Court cannot and does not subscribe to the theory that mere criminal activity, in and of itself, indicates that the petitioner was or is mentally incompetent or unbalanced such as to motivate a vacation of a sentence properly imposed.

Accordingly, the motion to vacate judgment is hereby denied.